UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW PRESCOTT, DDS, GINA TAMBORNINI, DDS, and ROY JOSEPH, DMD, <br><br> Plaintiffs, <br><br> v. <br><br> ARGEN CORPORATION, et al., <br><br> Defendants. | No. 13 CV 6147 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, who are dentists and dental professionals, complain that dental crowns they purchased were not as advertised. Instead of being durable, the crowns fractured in a matter of months. As result, plaintiffs claim injuries owing to fraud, negligence, breach of warranty, and strict products liability, and they seek to certify a class of similarly injured professionals.

Two companies that allegedly made the dental crowns—as well as one of their CEOs—now move to dismiss for failure to state a claim. For the following reasons, the motions are granted.

**I.  Legal Standard**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The

short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [the court] accept[s] the well-pleaded facts in the complaint as true . . . ." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).

## II. Background

The Captek Nano dental crown was introduced in 2007. Dkt. 35 ¶¶ 24, 26. This redesigned crown differed from its predecessors in that it contained a smaller amount of gold—a potentially significant development at the time given the commodity's increasing price. *Id*. The new design was flawed, however, because the Nano crown was "incapable over time of withstanding the ordinary everyday forces of human chewing[.]" *Id*. ¶ 24. Under the new design, "the metal and porcelain fail[ed] to sufficiently bind together, causing a failure at the junction of the two materials, and causing the porcelain generally to fracture." *Id*. ¶ 25.

Defendant Precious Chemicals USA, Inc. designed, manufactured, sold, distributed, and marketed the Nano crown beginning in 2007. *Id*. ¶ 8. Defendant

2

Argen Corporation did the same, but starting in January 2011.[1] *Id*. ¶ 9. Throughout these respective periods of time, both Precious Chemicals and Argen were aware of the "defective and structurally unsound nature" of the Nano crown. *Id*. ¶ 27. Nevertheless, they continued to manufacture, sell, distribute, and market the Nano crown throughout the United States. *Id*. ¶ 28.

From 2007 to the date plaintiffs began this action, Louis Azzara and Nick Azzara—employees of both Precious Chemicals and Argen—"used numerous methods [to] advertis[e] the Nano crown, including . . . posting information on . . . www.argen.com and [www.captek.com], [and] print[ing] brochures, leaflets, fliers, pamphlets and similar advertising materials. *Id*. ¶ 30. "[O]ther members of Argen's and Precious Chemicals' marketing staff" did the same. *Id*. Precious Chemicals, Argen, and the Azzaras also all persuaded various dental laboratories—including defendants Premium Dental Lab, Inc. and Jade Dental Laboratory Group, Inc.—to direct these advertisements to plaintiffs. *Id*. ¶ 32.

Rather than reveal the true defective nature of the Nano crown, these advertisements falsely represented that: (1) "the Captek Nano technology 'enable[d] the creation of long-lasting crowns'"; (2) "the Captek Nano 'd[id] not change over time [and that] [t]here [would] never be any corrosion and [it would] not deteriorate over time . . . the optical esthetics of the final crown [would] last for many years'"; (3) "the Captek Nano's 'advanced technology combine[d] all the advantages of high-purity gold, without sacrificing the strength'"; and (4) "'years of research and

---

[1] The complaint does not make clear whether Precious Chemicals continued its Nano crown-related activities once Argen got involved.

patient satisfaction ha[d] proven that Captek crowns [were] durable, accurate, attractive high-purity gold, without sacrificing the strength.'" *Id*. ¶ 66.

Plaintiffs Matthew Prescott, Gina Tambornini, and Roy Joseph were dentists and dental professionals who viewed these advertising materials and relied on them in deciding to purchase[2] Nano crowns and implant them into their patients. *Id*. ¶¶ 1, 31, 38. Plaintiffs eventually realized the Nano crowns were defective and unfit, so they "directly inform[ed] their dental laboratory representative(s) of the defective and unfit nature of the crowns and placed them on notice and apprised them of the trouble with the Captek Nano crown." *Id*. ¶ 40. "In turn, representatives of Premium [Dental Lab], and Jade [Dental Lab] . . . did directly inform and place Precious Chemicals and Argen on notice of the crown's defects and appris[ed] them of the trouble with the Captek Nano crown." *Id*. ¶ 41.

As a result of both the crown's defects and the defendants' false representations, "patients of Plaintiffs . . . experienced great pain and suffering and were required to undergo additional oral surgeries in an effort to resolve the issue[s] caused by [d]efendants' product." *Id*. ¶ 42. More relevant to this action, though, plaintiffs "were required to extract the defective crowns, order new crowns and seat the new crowns, which required their additional time, valued at their average

---

[2] When plaintiffs bought the Nano crowns, they believed they were buying them "as one single unit from . . . Precious Chemicals and Argen, which would be cast and prepared by a dental laboratory of [plaintiffs'] choosing using materials sold by Argen and Precious Chemicals and under Argen and Precious Chemicals created guidelines." *Id*. ¶ 35. Plaintiffs claim that "Precious Chemicals, Argen, Premium [Dental Lab], and Jade [Dental Lab] acted in concert in making the Nano [c]rowns that were eventually purchased by" plaintiffs. *Id*. ¶ 36.

4

dental rate, their out-of-pocket expense for [the] purchase of new crowns, and additional lab and technician costs." *Id.* ¶ 44.

In their First Amended Class Action Complaint, plaintiffs allege claims for (1) breach of the implied warranty of merchantability, (2) fraudulent misrepresentation, (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, (4) negligence, and (5) strict products liability, against defendants Argen, Anton Woolf (Argen's CEO), Precious Chemicals, Louis Azzara, Nick Azzara, Premium Dental Lab, and Jade Dental Lab. *Id.* at 12-21.[3]

Defendants Argen and Woolf jointly moved to dismiss Counts I-III for failure to state a claim, while Precious Chemicals moved to dismiss Counts I-V. All movants offer the same arguments as to Counts I-III.[4]

**III. Analysis**

**A. Breach of Implied Warranty (Count I)**

Under section 2-607 of the Uniform Commercial Code, a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the

---

[3] Subject matter jurisdiction in this matter arises under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiffs seek to represent a nationwide class of "dentists and dental profession[als] who purchased the Captek Nano dental crown for ultimate seating into the mouths of their patients." Dkt. 35 ¶¶ 47-48. Plaintiffs Prescott and Tambornini are citizens of Illinois. *Id.* ¶¶ 10-11. Plaintiff Joseph is a citizen of Texas. *Id.* ¶ 12. Defendant Precious Chemicals is incorporated in Delaware, *id.* ¶ 14, and, according to its website, headquartered in Florida, s*ee* http://www.captek.com/Contact.aspx (last accessed September 16, 2014). Defendant Argen is incorporated in California, Dkt. 35 ¶ 15, and, according to its website, headquartered in California, s*ee* http://www.argen.com/index.php?id=20 (last accessed September 16, 2014).

[4] Defendant Jade Dental Lab also filed a motion to dismiss but it was converted into a motion for summary judgment. *See* Dkt. 54; Dkt. 67. In its memorandum of law in support of the motion, Jade Dental Lab incorporated by reference the motions to dismiss and supporting memoranda of law of Precious Chemicals and Argen. Dkt. 55 at 3. Jade Dental Lab's motion remains pending and is not yet fully briefed.

5

seller of [the] breach or be barred from any remedy . . . ." 810 ILCS 5/2-607(3)(A). "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." 810 ILCS 5/2-607 cmt. 4. Notice must be given directly. *See Connick v. Suzuki Motor Company, Ltd.*, 174 Ill. 2d 482, 492 (1996). While the buyer's notice may be excused if the seller has actual knowledge of trouble with a particular product purchased by the particular buyer, a seller's general awareness of problems with the product line is insufficient. *Id.* at 492-94. Here, defendants argue that Count I should be dismissed because plaintiffs have not alleged (1) that they gave the required notice, or (2) that defendants had actual knowledge of the breach. Plaintiffs disagree, believing they pled both.

Plaintiffs have not sufficiently alleged that they gave notice of the breach to defendants. Although plaintiffs claim they gave notice through the dental laboratories, *see* Dkt. 35 ¶¶ 40-41, indirect notice of this kind does not satisfy the UCC as interpreted by the Illinois Supreme Court. *See Connick*, 174 Ill. 2d at 492. Nor have plaintiffs pled that defendants had actual knowledge of troubles with particular products purchased by particular purchasers. Plaintiffs alleged only that defendants had actual knowledge of problems with the Nano crown product line in general. *See* Dkt. 35 ¶¶ 8, 9, 27-28, 42. Thus, section 2-607 bars plaintiffs' claim for breach of warranty.

Plaintiffs' claim also fails because they have not pled privity of contract. A plaintiff seeking economic damages for breach of implied warranty must allege privity of contract with the defendant. *See Voelker v. Porsche Cars North America,*

*Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (citing *Rothe v. Maloney Cadillac, Inc.*, 119 Ill.2d 288, 290-92 (1988)). Plaintiffs believe the following allegations demonstrate privity:

> 4. Captek™ is the trademarked name for various products, including the Captek Nano™ dental crown, owned, developed, manufactured, sold and distributed by Precious Chemicals USA, Inc. and Argen. . . .
>
> 6. The Captek Nano™ Crown's defective nature, caused by its improper structure and design, was distributed, marketed, advertised and sold to the public, particularly to dentists and dental professionals in the treatment of their patients, from at least 2007 through present.
>
> 7. In January, 2011, Argen acquired the worldwide exclusive manufacturing and distribution rights for all Captek ™ products and technologies, including, but not limited to, the Captek Nano™ Crown.
>
> 8. From 2007 through the present, Precious Chemicals USA, Inc. individually and through its employees and agents, were engaged in the design, manufacturing, sale, distribution, wholesaling, marketing, advertising and retailing of various products, namely, the Captek Nano™ Crown, for ultimate use by members of the general public, and particularly, practicing dentists in the care and treatment of their patients, knowing the product to be of an unsafe and unstable nature.
>
> 9. From January, 2011 through the present, Argen individually and through its employees and agents, gained the exclusive manufacturing and distributing rights for all Captek products and technologies, namely, the Captek Nano™ Crown, and have been engaged in the design, manufacture, sale, distribution, wholesaling, marketing, advertising and retailing of this products, for ultimate use by members of the general public, and particularly, practicing dentists in the care and treatment of their patients, knowing the product to be of an unsafe and unstable nature. . . .
>
> 28. Despite their knowledge that the Nano Crown was defective and unfit for its intended use, Defendants Precious Chemicals and Argen continued to manufacture, market, sell and distribute the crown throughout the United States. . . .

35. Plaintiffs and the Class reasonably believed that they were purchasing a Captek Nano crown as one single unit from the Defendants Precious Chemicals and Argen, which would be cast and prepared by a dental laboratory of their choosing using materials sold by Argen and Precious Chemicals and under Argen and Precious Chemical created guidelines.

36. Defendants Precious Chemicals, Argen, Premium and Jade acted in concert in making the Nano Crowns that were eventually purchased by Plaintiffs and the Class.

37. Defendants Precious Chemicals, Argen, Premium and Jade acted jointly in making the Nano Crowns under the guidance, certification, training and guidelines of Precious Chemicals, Argen, Louis Azzara and Nick Azzara. . . .

39. From 2007 through the present, Defendants Precious Chemicals and Argen have sold Nano crowns to numerous Class members throughout the United States. . . .

Dkt. 135 ¶¶ 4, 6-9, 28, 35-37, 39.

While these paragraphs certainly discuss the sale and purchase of Nano crowns generally, they nowhere state the simple fact that plaintiffs purchased Nano crowns directly from Argen or Precious Chemicals. Plaintiffs may come close when they say they "reasonably believed that they were purchasing a Captek Nano crown as one single unit from the Defendants Precious Chemicals and Argen," but this allegation nonetheless stops short of actually claiming that plaintiffs *in fact* purchased a Captek Nano crown as one single unit from Precious Chemicals or Argen. Plaintiffs do not cite—nor have I found—any case holding that a plaintiff's good faith belief in privity suffices to satisfy the privity requirement. Plaintiffs also offer no authority in support of their argument that privity is present because Argen and Precious Chemicals "acted in concert" with Premium Dental Lab and

8

Jade Dental Lab. Again, I have found no such authority. Thus, plaintiffs have not pled privity of contract.

Plaintiffs argue in the alternative that an exception to the privity requirement applies. Dkt. 66 at 5. They cite a number of cases in which courts applying Illinois law have allowed breach of warranty claims despite a lack of privity. *Patargias v. Coca-Cola Bottling Co.*, 332 Ill. App. 117 (1st Dist. 1947); *Suvada v. White Motor Co.*, 32 Ill. 2d 612 (1965), *overruled on other grounds*, *Dixon v. Chicago*, 151 Ill. 2d 108 (1992); *Reed v. City of Chicago*, 263 F.Supp.2d 1123 (N.D. Ill. Mar. 5, 2003); *Whitaker v. Lian Feng Machine Co.*, 156 Ill. App. 3d 316 (1st Dist. 1987) (Rizzi, J. concurring).[5] These cases are inapposite, however, because they involved claims for personal injury (not economic loss), or because the plaintiff was an employee of a purchaser who had privity. *Patargias*, 332 Ill. App. at 120 (plaintiff vomited and was nauseated for two weeks after drinking a Coca-Cola with a mouse inside); *Suvada*, 32 Ill. 2d at 614 (tractor's failed brake system caused personal injuries); *Reed*, 263 F.Supp.2d at 1124 (detainee used paper isolation gown to hang himself); *Whitaker*, 156 Ill. App. 3d at 317 (bandsaw caused injuries to purchaser's employee).

---

[5] Plaintiffs also cite *Collins Co., Ltd. v. Carboline Co.*, 125 Ill. 2d 498, 516 (1988) for its statement that "the published comments [to the UCC] leave a door at least slightly ajar for future extension of some warranties in appropriate circumstances to nonprivity plaintiffs." Dkt. 66 at 5. This statement is dicta, however, because the *Collins* court actually found that the plaintiff had privity. 125 Ill. 2d at 516. What is more, the court explicitly acknowledged—without abrogation—its prior decision not to "abolish the privity requirement in suits to recover for economic loss when breach of an implied warranty is alleged." *Id.* at 515 (citing *Szajna v. General Motors Corp.*, 115 Ill. 2d 294 (1986)).

9

Perhaps sensing these important distinctions, plaintiffs further argue that they:

> [A]re expected to be the ones to ultimately make use of and place the crown into the mouths of their patients, with whom they have a duty to treat within an acceptable standard of care, inclusive of the duty to treat patients so as not to place their life and health in jeopardy. A crown that fractures in someone's mouth is a health hazard.

Dkt. 66 at 6; *see* Dkt. 64 at 6-7. This argument is unpersuasive. That plaintiffs' patients may have their own separate claims for personal injury does not change the fact that plaintiffs in this case seek only economic damages.

Defendants' motions are granted as to Count I.

### B.     Fraudulent Misrepresentation (Count II)

In Illinois, the elements of a claim for fraudulent misrepresentation are: (1) a false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011).

Here, plaintiffs do not satisfy Rule 9(b) because they fail to identify any specific transaction that resulted from fraud. Instead of focusing on any single purchase, plaintiffs' complaint purports to describe "all relevant times." *See* Dkt. 35

¶¶ 27 ("At all relevant times, Defendants Precious Chemicals and Argen have been aware of the defective and structurally unsound nature of the Captek Nano Crown"); 34 ("Plaintiffs and the Class had no knowledge of Nano Crown's defective nature, and at all relevant times they reasonably expected that they were purchasing a safe and reliable product"); 66 ("At all relevant times, the Captek Defendants made various false statements and promises on their websites and in their advertising materials regarding the Captek Nano crown"); *see also Id*. ¶ 69 ("But for the misrepresentations made by the Captek Defendants, inclusive of the false statements included in their websites and advertising materials, the Plaintiffs and the class would not have purchased and placed the Captek Nano crowns into their patients' mouths").

To be sure, plaintiffs allege that the fraudulent transactions occurred sometime between 2007 and the filing of the First Amended Complaint. *Id*. ¶¶ 8, 29. But plaintiffs must do more than that to withstand Rule 9(b). *See United States ex. rel. Fowler v. Caremark Rx, LLC*, 496 F.3d 730, 741-42 (7th Cir. 2007) (holding complaint failed to satisfy Rule 9(b) because the relators "d[id] not present any evidence *at an individualized transaction level*") (emphasis in original), *overruled on other grounds, Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009); *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990) (holding complaint failed to satisfy Rule 9(b) because it did not "give examples of problem loans" that underlay the fraud claim).

Nor is this missing information the type only defendants would have, thereby excusing plaintiffs at this stage of the case.[6] *Cincinnati Life Insurance Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) ("while [the court] require[s] a plaintiff claiming fraud to fill in a fairly specific picture of the allegations in her complaint, [it] 'remain[s] sensitive to information asymmetries that may prevent a plaintiff from offering more detail.'"). Plaintiffs can presumably determine (and share) identifying information about the transactions in which they believe they were duped. They fail to allege such transactions with the requisite particularity, and therefore, do not state a claim for fraud.

Defendants' motions are granted as to Count II.

C. **Illinois Consumer Fraud and Deceptive Business Practices Act**

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 24 (1st Dist. 2013). Some Illinois courts further require a plaintiff to plead that he is a "consumer." *See Bank One Milwaukee v.*

---

[6] The same cannot be said for the specifics of exactly who posted the alleged misrepresentations on the identified websites, or exactly when that information was published. In this regard, the present case is distinguishable from *GoHealth, LLC v. Simpson*, 2013 WL 6183024, *9-10 (N.D. Ill. Nov. 26, 2013), in which the alleged misrepresentations came from an employee, not a website. Nevertheless, to the extent plaintiffs rely, not on the websites, but instead on (1) statements from Louis Azzara or Nick Azzara, or (2) statements contained in unidentified brochures, leaflets, fliers, or pamphlets, plaintiffs' First Amended Complaint is insufficiently particular.

*Sanchez*, 336 Ill. App. 3d 319, 322 (2d Dist. 2003). The Act defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). But a "business purchaser is not a consumer, because his only use of the purchased product is as an input into the making of a product that he sells . . . ." *Williams Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004).

Plaintiffs argue that dentists are consumers of Nano crowns because they do not purchase the crowns for resale in the ordinary course of their trade or business. Dkt. 66 at 11; Dkt 64 at 11. But dentists do purchase crowns for resale, as plaintiffs' complaint makes clear. Dkt. 35 ¶¶ 1 ("Plaintiffs and the proposed class are dentists and dental profession[als] who purchased the Captek™ Nano dental crown for the ultimate seating into the mouths of their patients"); 34 ("Plaintiffs and the Class had no knowledge of Nano Crown's defective nature, and at all relevant times they reasonably expected that they were purchasing a safe and reliable product to be used in treating patients and for other normal and usual uses"); 38 ("From 2007 through the present, the Plaintiffs and the Class unknowingly purchased and placed these defective modified crowns into the mouths of their patients for the purpose of dental treatment"); 44 (implying that patients paid plaintiffs for the Nano crowns). Thus, taking the complaint as a whole, it is not plausible to infer that plaintiffs are anything but business purchasers. *Twombly*, 550 U.S. at 570; *Williams Electronics*, 366 F.3d at 579.

Plaintiffs also argue that because patients cannot sue dentists under the Act for conduct relating to the actual practice of dentistry—including (I'll assume) the re-selling of crowns—that means dentists must be the end-of-the-line consumers of dental crowns as far as the Act is concerned. I disagree. Whether or not patients can sue their dentists does not alter the common-sense fact that dentists do not buy dental crowns for their own use—they buy them, as the complaint demonstrates, to put into their patients' mouths. Thus plaintiffs are not "consumers."

Alternatively, some courts have held that even non-consumers can bring claims under the Act if they can satisfy the "consumer nexus test." *See Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 160 (2d Dist. 1998). The consumer nexus test requires a plaintiff to show that (1) its actions were akin to a consumer's actions (i.e., the plaintiff must establish a link between it and consumers); (2) the defendant's representations concerned consumers other than plaintiff; (3) the defendant's particular action involved consumer protection concerns; and (4) the plaintiff's requested relief would serve the interests of consumers. *Id*.

Plaintiffs' allegations likely meet the first three prongs of this test because plaintiffs were effectively ordering the Nano crowns on behalf of their patients. Further, defendants' alleged misrepresentations were published publicly so they concerned consumers other than plaintiffs. It was also plaintiffs' patients who ultimately bore the burden of the misrepresentations because they were the ones who had to undergo follow-up procedures to replace the defective crowns. And even

14

though plaintiffs did not charge their patients for the additional crowns, the patients undoubtedly incurred out-of-pocket expenses as result of having to go in for more appointments. Some patients may have also had to pay more for dental services as plaintiffs and other dentists shifted these additional costs to their customers. *See Walsh Chiropractic, Ltd. v. StrataCare, Inc.*, 752 F.Supp.2d 896, 913 (S.D. Ill. 2010) ("patients of medical providers (i.e. actual consumers at large) may be affected by StrataCare's alleged fraudulent claims of PPO discounts, via fee increases needed to cover their providers decreased income. As a result, an adequate 'consumer nexus' reasonably may be inferred") (internal quotation omitted).

Plaintiffs nonetheless fail the consumer nexus test because the relief they request would not serve the interests of consumers. Plaintiffs' consumer fraud count does not actually ask for any relief, s*ee* Dkt. 35 ¶¶ 76-89, and their general prayer asks only that I certify a class, name plaintiffs as class representatives, name their counsel as class counsel, find that defendants violated the relevant laws, award plaintiffs and the class damages, declare the rights of the parties, and award fees and costs, *id*. at 22. None of these requests would benefit the damaged patients in the least. Accordingly, plaintiffs do not have statutory standing to bring this claim.

Finally, for the same reasons plaintiffs failed to state a claim for fraudulent misrepresentation, they fail to state a claim for consumer fraud. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, -- F.3d --, 2014 WL 3765935, *3 (7th Cir. 2014) (claims

15

under the Illinois Consumer Fraud and Deceptive Business Practices Act must be pled with Rule 9(b) particularity).

Defendants' motions are granted as to Count III.

### D. Negligence (Count IV) and Strict Liability (Count V) [7]

Under Illinois's *Moorman* doctrine, a plaintiff cannot recover solely economic losses under theories of negligence or strict liability in tort. *Moorman Manufacturing Company v. National Tank Company*, 91 Ill. 2d 69, 81 (1982). The Illinois Supreme Court has recognized three exceptions to this rule: (1) where the plaintiff sustained damage, i.e., personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, i.e., fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. *First Midwest Bank, N.A. v. Stewart Title Guaranty Company*, 218 Ill. 2d 326, 337 (2006).

Here, plaintiffs do not dispute that the losses underlying their negligence and strict liability claims are purely economic. Instead, plaintiffs argue these claims fall within the fraud exception to the *Moorman* rule because they allege that "their damages were proximately caused by [Precious Chemicals] intentionally and falsely misrepresenting that the Captek Nano Crown '[was] durable', '[would] last for years', and [was] attractive 'without sacrificing the strength', when it in fact [was] not." Dkt. 66 at 3.

---

[7] Only Precious Chemicals moved to dismiss Counts IV or V.

16

This argument fails. Negligence is by definition unintentional. It therefore cannot constitute fraud, which is by definition intentional. *See Arthur v. Lutheran General Hospital, Inc.*, 295 Ill. App. 3d 818, 825 (1st Dist. 1998) ("Negligence claims address unintentional malfeasance or nonfeasance"); *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 428 (2004) (fraud is an intentional tort); *see also Ibarolla v. Nutrex Research, Inc.*, 2012 WL 5381236, *6 (N.D. Ill. Oct. 31, 2012) (dismissing negligence claim for economic losses over argument that it fit within *Moorman* fraud exception because "[t]hat, of course, is impossible, . . . by definition fraud is intentional and negligence is not").

Likewise, plaintiffs' strict liability claim cannot be construed as falling within the fraud exception. *See* Dkt. 35 ¶¶ 100-104. The elements of strict liability in tort are: (1) that an injury resulted from a condition of the product; (2) the condition of the product was an unreasonably dangerous one; and (3) that the condition existed at the time the product left the manufacturer's control. *Doyle v. White Metal Rolling and Stamping Corp.*, 249 Ill. App. 3d 370, 376 (1st Dist. 1993). None of these elements pertains in any way to intentional false representation, and plaintiffs present no authority to the contrary. That plaintiffs allege elsewhere in their complaint that Precious Chemicals made intentional false representations, does not alter the very nature of strict products liability.

Precious Chemicals' motion is granted as to Counts IV and V.[8]

---

[8] Precious Chemicals also moved to dismiss plaintiffs' class allegations. A plaintiff must be a member of any class it wishes to represent. *See Nielsen v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145, 149 (7th Cir. 1995). Plaintiffs have failed to state any claims against Precious

17

## IV. Conclusion

Defendant Precious Chemicals' motion to dismiss, Dkt. 36, is granted, and Counts I-V are dismissed as to it.

Defendants Argen and Woolf's motion to dismiss, Dkt. 39, is granted, and Counts I-III are dismissed as to them.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: 9/17/14

---

Chemicals, so they are not members of the class they wish to represent. Precious Chemicals' motion is granted as to the class allegations.