UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTHEW PRESCOTT, DDS,
GINA TAMBORNINI, DDS, and
ROY JOSEPH, DMD,

    Plaintiffs,

v.

ARGEN CORPORATION, et al.,

    Defendants.

No. 13 CV 6147

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiffs are dentists and dental professionals who believe dental crowns they purchased were not as advertised. Instead of being durable, plaintiffs allege the crowns fractured in a matter of months. Seeking to represent a class of similarly situated professionals, plaintiffs have filed suit against the two companies alleged to have made the crowns. The dentists claim these companies knowingly misrepresented the nature of their product, and that such misrepresentations amounted to both common-law fraud and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

The defendant manufacturers now move under Rule 12(b)(6) to dismiss plaintiffs' second amended complaint. For the following reasons, both motions are granted and Counts II and III are dismissed with prejudice.

## I. Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [the court] accept[s] the well-pleaded facts in the complaint as true . . . ." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).

## II. Background

The Captek Nano dental crown was introduced in 2007. [103] ¶ 20. This redesigned Captek crown differed from its predecessors in that it contained less gold—a potentially significant development given the commodity's increasing price at the time. *Id.* ¶¶ 20, 22. The new design was flawed, however, because the Nano was "incapable over time of withstanding the ordinary everyday forces of human

chewing . . . ." *Id*. ¶ 20. Under the new design, "the metal and porcelain fail[ed] to sufficiently bind together, causing a failure at the junction of the two materials, and causing the porcelain generally to fracture." *Id*. ¶ 21.

Plaintiffs Matthew Prescott, Gina Tambornini, and Roy Joseph were dentists and dental professionals who purchased the Nano crown for ultimate seating into the mouths of their patients. *Id*. ¶ 1. As a result of the crown's defects, "patients of Plaintiffs . . . experienced great pain and suffering and were required to undergo additional oral surgeries . . . ." *Id*. ¶ 43. More relevant to this action, plaintiffs "were required to extract the defective crowns, order new crowns and seat the new crowns, which required their additional time, valued at their average dental rate, their out-of-pocket expense for [the] purchase of new crowns, and additional lab and technician costs." *Id*. ¶ 45.

Defendant Precious Chemicals USA, Inc. designed, manufactured, sold, distributed, advertised and marketed the Nano crown beginning in 2007. *Id*. ¶ 8. Defendant Argen Corporation did the same, but starting in January 2011. *Id*. ¶ 9. From 2007 through at least January 2011, Precious Chemicals "used numerous methods of advertising the Nano crown . . . including . . . posting information and specific statements on their website at www.captek.com/Concept/Technology/About, as well as through printed brochures, leaflets, fliers, pamphlets and similar advertising materials." *Id*. ¶ 27. Since 2007, Precious Chemicals had been aware of the defective and structurally unsound nature of the Nano crown, but continued to manufacture, market, and sell it. *Id*. ¶¶ 23, 25.

3

Starting in January 2011, Argen "used numerous methods of advertising the Captek Nano . . . including . . . posting information and specific statements on . . . www.argen.com (under the sub-heading 'Captek Technology') and www.captek.com/Concept/Technology/About, as well as through printed brochures, leaflets, fliers, pamphlets and similar advertising materials." *Id*. ¶ 29. Since January 2011, Argen had been aware of the defective and structurally unsound nature of the Nano crown, but continued to manufacture, market, and sell it. *Id*. ¶¶ 24-25.

Rather than reveal the true defective nature of the Nano crown, the Captek and Argen websites falsely represented that: (1) "the Captek Nano technology 'enable[d] the creation of long-lasting crowns'"; (2) "the Captek Nano 'd[id] not change over time [and that] [t]here [would] never be any corrosion and [it would] not deteriorate over time . . . the optical esthetics of the final crown [would] last for many years'"; (3) "the Captek Nano's 'advanced technology combine[d] all the advantages of high-purity gold, without sacrificing the strength'"; and (4) "'years of research and patient satisfaction ha[d] proven that Captek crowns [were] durable, accurate, attractive high-purity gold, without sacrificing the strength.'" *Id*. ¶ 70.

"In mid-2008, [plaintiff Joseph] view[ed] and read the information, statements and representations posted on the Captek website . . . which he relied upon in purchasing Captek Nano Crowns for his patients starting in September, 2008." *Id*. ¶ 31. The complaint does not allege any particular instance in which plaintiffs Prescott or Tambornini viewed either website. Instead, Prescott and

Tambornini claim they relied on conversations they had with defendant Premium Dental Lab,[1] in which Premium misrepresented the quality of the Nano crowns. *Id*. ¶¶ 32-42.

In their second amended class action complaint, plaintiffs allege claims for breach of the implied warranty of merchantability (Count I), fraudulent misrepresentation (Count II), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III). *Id*. at 12-19. Plaintiffs bring Count I against Premium Dental alone, and Counts II and III against both Precious Chemicals and Argen. *Id*.[2] Defendants Precious Chemicals and Argen now move to dismiss Counts II and III for failure to state a claim.

## III. Analysis

### A. Fraudulent Misrepresentation (Count II)

In Illinois, the elements of a claim for fraudulent misrepresentation are: (1) a false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting

---

[1] Premium Dental has not yet appeared in this case.

[2] Subject matter jurisdiction in this matter arises under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiffs seek to represent a nationwide class of "dentists and dental profession[als] who purchased the Captek Nano dental crown for ultimate seating into the mouths of their patients." [103] ¶¶ 47-48. Plaintiffs Prescott and Tambornini are citizens of Illinois. *Id*. ¶¶ 10-11. Plaintiff Joseph is a citizen of Texas. *Id*. ¶ 12. Defendant Precious Chemicals is incorporated in Delaware, *id*. ¶ 14, and, according to its website, headquartered in Florida, s*ee* http://www.captek.com/Contact.aspx (last accessed January 6, 2015). Defendant Argen is incorporated in California, [103] ¶ 15, and, according to its website, headquartered in California, s*ee* http://www.argen.com/index.php?id=20 (last accessed January 6, 2015).

5

from that reliance. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011).

Prescott and Tambornini have not satisfied Rule 9(b) as to Count II because they do not plead reliance with sufficient particularity. The complaint contains several vague references to "Plaintiffs" relying on "advertising materials" and "representations." *See, e.g.*, [103] ¶¶ 30 ("These advertising materials were directly distributed to, viewed by and relied upon by Plaintiffs and the class."), 76 ("Plaintiffs and the Class relied upon said representations concerning the Captek Nano crown and did purchase and seat the Captek Nano crowns into their patients' mouths"). These allegations, however, omit the particular circumstances of either Prescott or Tambornini's reliance—e.g., the approximate date of their reliance, the specific documents on which they relied, the specific misstatements within the documents on which they relied, or how any misstatements caused plaintiffs to rely on them. Lacking such detail, these types of allegations fail to satisfy Rule 9(b).

Further, while Prescott and Tambornini use more particularity in alleging that they relied on Premium's misrepresentations, they do not name Premium as a defendant in Count II. Nor do they allege that their reliance on Premium's misrepresentations constituted constructive reliance on Argen and Precious

6

Chemicals because, for example, these manufacturers knowingly lied to Premium, who in turn innocently shared misinformation with Prescott and Tambornini. By contrast, the complaint makes clear that Premium itself knowingly misrepresented the quality of the Nano crown to Prescott and Tambornini. *Id.* ¶ 44.[3]

In sum, the allegations connecting these plaintiffs to the movants are too general, while the allegations that are (arguably) particular have nothing to do with Argen or Precious Chemicals. Prescott and Tambornini have therefore failed to state their claims for fraudulent misrepresentation.

Turning to Joseph, other than the vague reliance allegations noted above, he does not allege that he relied on any Argen misrepresentations at all. Although he claims to have relied in September 2008 on misrepresentations contained on the Captek website, Argen is not alleged to have controlled that website—or to have known about the Nano defects—until January 2011. *Id.* ¶¶ 24, 29. Thus, Joseph's claim against Argen fails.

That leaves Joseph's claim against Precious Chemicals, who, by 2008, both controlled the Captek website and knew of the Nano crown's defects. *Id.* ¶¶ 23, 27. This time around, Joseph pleads his fraud claim with more particularity than he did in the first amended complaint. Unlike before, Joseph identifies the specific

---

[3] In response to Precious Chemicals's motion, plaintiffs state: "Premium had a clear relationship with Precious Chemicals, was certified by and provided information relating to its Captek products to Precious Chemicals, and in fact was the lab that distributed their products including the Captek crown, and the modified Nano crown." [108] at 6. However, the only allegations in the complaint that bear on the relationship between the movants and Premium are that, like other dental labs, Premium sold Nano crowns. *See, e.g.*, [103] ¶ 36. Contrary to plaintiffs' assertions, the complaint says nothing about Premium being certified by movants or regularly communicating with them.

source of the misrepresentation at issue (the Captek website), gives a timeframe in which he relied on the misrepresentation ("mid-2008"), and says *something* about the transactions that resulted from this reliance ("which he relied upon in purchasing Captek Nano Crowns for his patients starting in September, 2008").

Nevertheless, what Joseph says about the fraudulently induced transactions remains insufficient. In dismissing the first amended complaint, I held that "plaintiffs d[id] not satisfy Rule 9(b) because they fail[ed] to identify any specific transaction that resulted from fraud." [88] at 10; *see also United States ex rel. Grenadyor v. Ukrainian Village Pharmacy*, 772 F.3d 1102, 1107 (7th Cir. 2014) (holding it insufficient to plead that all pharmacy customers received a kickback; instead, plaintiff "had to allege either that the pharmacy submitted a claim to Medicare . . . on behalf of a specific patient who had received a kickback, or at least name a Medicare patient who had received a kickback"); *United States ex. rel. Fowler v. Caremark Rx, LLC*, 496 F.3d 730, 741-42 (7th Cir. 2007) (holding complaint failed to satisfy Rule 9(b) because the relators "d[id] not present any evidence at an individualized transaction level"), overruled on other grounds, *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009); *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990) (holding complaint failed to satisfy Rule 9(b) because it did not "give examples of problem loans" that underlay the fraud claim).

Joseph has narrowed the scope of his claim from targeting all transactions, to targeting transactions beginning in September 2008. But that is still a far cry from

pleading that any specific transaction resulted from fraud. Joseph provides no invoice number, no order specifications, and no patient names (aliases would have been fine). As I said before ([88] at 12):

> Nor is this missing information the type only defendants would have, thereby excusing plaintiffs at this stage of the case. *Cincinnati Life Insurance Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) ("while [the court] require[s] a plaintiff claiming fraud to fill in a fairly specific picture of the allegations in her complaint, [it] 'remain[s] sensitive to information asymmetries that may prevent a plaintiff from offering more detail.'"). Plaintiffs can presumably determine (and share) identifying information about the transactions in which they believe they were duped.

While I noted in the prior opinion that plaintiffs could not be expected to plead specific information about who created the websites and when, *see id.* at 12 n. 6, that caveat was limited to information about the creation of the website. Plaintiffs must still plead the remaining circumstances of the fraudulent transactions with particularity. Thus, Joseph's claim against Precious Chemicals fails as well.

Argen's and Precious Chemicals's motions are granted as to all plaintiffs on Count II.

### B. Illinois Consumer Fraud and Deceptive Business Practices Act (Count III)

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 24 (1st Dist. 2013). For a non-resident plaintiff

to have standing under the Act, the circumstances relating to the disputed transaction must have occurred primarily and substantially in Illinois. *Crichton v. Golden Rule Insurance Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery v. State Farm Mutual Automobile Insurance Company*, 216 Ill.2d 100 (2005)).

"[I]n a consumer fraud action, the plaintiff must actually be deceived by a statement or omission." *De Bouse v. Bayer*, 235 Ill.2d 544, 555 (2009). Thus, a plaintiff must allege that he was "actually deceived, either directly or indirectly" by the defendant. *Id.* at 559. The plaintiff must have seen or heard (and been deceived by) the defendant's misrepresentation, or someone acting on plaintiff's behalf, say a doctor, must have seen or heard (and been deceived by) the defendant's misrepresentation. *Id.* As in this case, Rule 9(b) applies to claims brought under the Act that sound in fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).

All three plaintiffs' consumer fraud claims fail. First, Joseph lacks standing to sue under the Act. As a citizen of Texas, Joseph is "a non-resident plaintiff." While this fact alone does not preclude his claim, the fact that he alleges no connection to Illinois does. Neither moving defendant is headquartered or incorporated in Illinois. Nor is Joseph alleged to have done business with Premium Dental—an Illinois corporation. Although Argen and Precious Chemicals are both alleged to have transacted with Prescott and Tambornini—both Illinois residents—the complaint reveals no relation between those circumstances and Joseph's disputed transactions. Because Joseph fails to allege that the circumstances

10

relating to his disputed transactions occurred primarily and substantially in Illinois, he may not seek relief under the state's consumer protection law.

Second, Prescott and Tambornini have pled neither direct nor indirect deception. As already discussed, the complaint contains no particular allegations of Prescott or Tambornini seeing or reading any misrepresentation made by Argen or Precious Chemicals. While Prescott and Tambornini do allege that they were deceived by Premium Dental, the complaint does not claim that Premium was itself deceived by either manufacturer. In fact, under plaintiffs' theory, Premium was well aware of the Nano crown's problems when it deceived Prescott and Tambornini.

Argen's and Precious Chemicals's motions are granted as to all plaintiffs on Count III.[4]

---

[4] Precious Chemicals and Argen also move to dismiss plaintiffs' class allegations. A plaintiff must be a member of any class it wishes to represent. *See Nielsen v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145, 149 (7th Cir. 1995). Plaintiffs have failed to state any claims against either movant, so they are not members of the class they wish to represent. Precious Chemicals's and Argen's motions are also granted as to the class allegations.

## IV. Conclusion

Defendant Precious Chemicals's motion to dismiss [104] is granted. Defendant Argen's motion to dismiss [106] is granted. After three attempts, plaintiffs have been unable to state a viable claim against either movant. Continued efforts would therefore be futile. Accordingly, Counts II and III are dismissed with prejudice. Argen and Precious Chemicals are terminated from the case.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: 1/6/15